IN THE INTEREST OF C.S.
No. 28876.
Intermediate Court of Appeals of Hawaii.
December 31, 2008.
On the briefs:
Herbert Y. Hamada, for Mother-Appellant.
Howard H. Shiroma and Mary Anne Magnier, Deputy Attorneys General, State of Hawai'i, for Petitioner-Appellee, Department of Human Services.

SUMMARY DISPOSITION ORDER
WATANABE, Presiding J., FUJISE, and LEONARD, JJ.
Mother-Appellant (Mother) appeals the Order Awarding Permanent Custody filed on November 1, 2007 by the Family Court of the First Circuit[1] (family court) that terminated her parental and custodial rights over her child, C.S., and awarded permanent custody of C.S. to Petitioner-Appellee State of Hawai'i Department of Human Services (DHS). We affirm.
On October 11, 2006, following the October 5, 2006 death of C.S.'s father (Father) in Hawai'i, DHS filed a petition for temporary custody of C.S., alleging that Father's failure to provide for a legal caretaker for C.S. after Father's death and Mother's lack of contact and communication with C.S. "constitutes threatened harm to [C.S.]." DHS stated in the petition that Mother was unemployed, had been incarcerated, used crystal methamphetamine, and did not know if she was on probation. The petition further alleged that although "Mother expressed willingness to resolve any safety issues to be reunited with [C.S.,]" she "has not demonstrated the ability to be protective and meet the needs of [C.S.] due to inadequate living conditions and lack of financial support."
The record on appeal indicates that at the time the petition was filed, Mother was living in a homeless shelter in the state of California, after having been incarcerated for four months. She had not had contact with C.S. for approximately three years. Although Mother and DHS entered into family-service plans designed to help Mother address and resolve safety issues identified by DHS, Mother failed to comply with her obligations[2] under the plans, and on August 1, 2007, DHS filed a Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan. The motion requested that the family court revoke the existing service plan; revoke the prior award of foster custody; award permanent custody to an appropriate authorized agency, "which permanent custody order will terminate parental and custodial duties and rights"; and establish a permanent plan for the proposed adoption or permanent custody of C.S. On November 1, 2 0 07, the family court entered the Order Awarding Permanent Custody that Mother now appeals.
On appeal, Mother contends that: (1) she was not provided a reasonable period of time to provide a safe home for C.S. because (a) she did not have a case manager in San Diego, California to assist her, and (b) despite her limited resources and ineligibility for public assistance, DHS did not make reasonable efforts to assist her in meeting the requirements of her service plan by paying for her drug treatment and other services; and (2) the July 25, 2007 permanent plan for C.S. is not in C.S.'s best interests because the plan (a) prematurely proposes adoption of C.S. with no prospective adoptive parents for him, and (b) does not discuss the viability of C.S.'s placement with the paternal grandmother of C.S.'s half-brother, D.F. (D.F.'s grandmother), who lived in California.
After a careful review of the record on appeal and the briefs submitted by the parties, and having duly considered the issues and arguments raised on appeal, as well as the statutory and case law relevant to these issues, particularly In re Doe, 89 Hawai'i 477, 974 P.2d 1067 (App. 1999), and In re Doe, 100 Hawai'i 335, 344 n.15, 60 P.3d 285, 294 n.15 (2002), we disagree with Mother and conclude that there is substantial evidence in the record to support the family court's order.
The record reveals that Mother failed to attend required parenting classes, participate in required services, and obtain a drug assessment that DHS agreed to pay for. She also continued to use illicit drugs, in violation of the terms of her California probation sentence, experienced psychological difficulties that included a suicide attempt, and admitted that she was not currently able and will not be able for another year to care for C.S. Mother's failure to comply with her service plan, her unstable lifestyle, felony convictions, and prior history with the San Diego Child Welfare Services jeopardized her eligibility to receive services and benefits in California that were crucial to her demonstrating that she was able to provide C.S. with a safe-family home.
Although Mother did not have a case worker in California,[3] the record reflects that DHS actively provided case-management services to her and communicated with Mother regarding required services through numerous letters and telephone calls. However, Mother failed to take advantage of the services recommended by DHS in order to be reunited with C.S. The record also contains substantial evidence that Mother was reminded numerous times that her actions were crucial to demonstrating her willingness and ability to address and resolve her safety issues and to provide a safe-family home for C.S. but did not heed these reminders.
The family court did not err in determining that the permanent plan for C.S. was in his best interests. Contrary to Mother's argument, there is no legal requirement that the permanent plan for C.S. identify a permanent placement for C.S. Indeed, HRS § 587-73 (b) (1) (2006 & Supp. 2007) expressly provides that where the goal of a permanent plan is adoption of a child, the family court shall order:
(A) That the existing service plan be terminated and that the prior award of foster custody be revoked;
(B) That permanent custody be awarded to an appropriate authorized agency;
(C) That an appropriate permanent plan be implemented concerning the child whereby the child will:
(i) Be adopted pursuant to chapter 578; provided that the court shall presume that it is in the best interests of the child to be adopted, unless the child is or will be in the home of family or a person who has become as family and who for good cause is unwilling or unable to adopt the child but is committed to and is capable of being the child's guardian or permanent custodian; or
(ii) Remain in permanent custody until the child is subsequently adopted, placed under a guardianship, or reaches the age of majority, and that such status shall not be subject to modification or revocation except upon a showing of extraordinary circumstances to the court[.]
Thus, under HRS § 587-73, the determination of permanent placement is made after the award of permanent custody to DHS. As the Hawai'i Supreme Court observed in In re Doe, 100 Hawai'i at 346 n.19, 60 P.3d at 296 n.19, "[a]fter termination of rights, custody is given to DHS which is charged with finding a suitable home for the child. See HRS § 587-73(b)(2) (`permanent custody [is] awarded to an appropriate authorized agency')." (Emphasis added; some brackets in original.)
Finally, although Mother faults the permanent plan for C.S. on grounds that it "does not discuss whether placement with C.S.'s half brother [D.F.] should be pursued[,]" the record reveals that D.F.'s grandmother, with whom D.F. lived, was deemed "un-licensable" under the Interstate Compact for Placement of Children, HRS chapter 350E, and her home was denied for placement of C.S.
In light of the foregoing discussion,
IT IS HEREBY ORDERED that the Order Awarding Permanent Custody entered on November 1, 2007 is affirmed.
NOTES
[1] The Honorable Matthew Viola presided.
[2] For example, Mother failed to obtain a substance-abuse assessment that DHS agreed to pay for, stated that substance-abuse-treatment services were not appropriate because she was sober, and did not engage in parenting classes and other recommended services.
[3] According to the record on appeal, the County of San Diego Health and Human Services Agency does not offer case-management services prior to a child's placement with the agency pursuant to the Interstate Compact on Placement of Children, which in Hawai'i, is codified at Hawaii Revised Statutes (HRS) chapter 350E (1993).